UNITED STATES of America, Plaintiff-Appellant,

v.

FIRST NATIONAL BANK OF CIRCLE, Defendant-Appellee.

No. 79–4739.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1981.

Decided Aug. 7, 1981.

Stephen Gray, Washington, D. C., for plaintiff-appellant.

Thomas E. Towe, Billings, Mont., for defendant-appellee.

Before GOODWIN and ALARCON, Circuit Judges, and SCHWARZER,* District Judge.

SCHWARZER, District Judge:

The United States brought this action under Section 3505(b) of the Internal Revenue Code, 26 U.S.C. § 3505(b), to collect from the First National Bank of Circle (Bank) the unpaid withholding and Federal Insurance Contribution Act (F.I.C.A.) taxes owed by Fort Belknap Builders, Inc. (Builders). The district court granted the Bank's motion for summary judgment, and the United States appeals. We reverse, having determined that the court's actions were not in conformity with Rule 16, Fed.R. Civ.P., and that material issues of fact remain in dispute. Since the action must be remanded for trial, we also address certain issues of law which will be reached at trial.

*Factual and Procedural Background*

Builders is a corporation all of whose stock is held by the Fort Belknap Indian Community Council. In order to finance the purchase of a contract with the Department of Housing and Urban Development

---

* The Honorable William W. Schwarzer, United States District Judge, Northern District of California, sitting by designation.

(H.U.D.) for the erection of 50 houses, Builders borrowed funds from the Bank and one of its affiliates in 1970. Later in the same year the shareholders of Builders borrowed funds from the Bank and its affiliates to finance construction of a building for Builders. The lease of that building was assigned to Bank as security. In addition Builders assigned to Bank the proceeds from `the H.U.D. contract which were deposited directly in Builders' account when received while the Bank continued to make advances to Builders. Although the funds advanced came from banks affiliated with the Bank, all of the loans were arranged by Edward Towe, president of the Bank, working out of the offices of the Bank. Towe was authorized to make these loans and had possession of blank forms of notes executed by Builders. Towe was the president of all but one of the lending banks and owned 50 percent of the stock of Bank as well as some of the stock of the lending banks.

During the latter part of 1971, Builders' account with Bank was substantially overdrawn. Beginning in the fourth quarter of 1970 and through 1971, Builders paid its employees but failed to pay withholding and F.I.C.A. taxes.

This action was filed on July 18, 1974, to recover from the Bank under Section 3505(b) unpaid withholding and F.I.C.A. taxes owed by Builders for the fourth quarter of 1970 and all four quarters of 1971. That section imposes liability for federal withholding taxes on a person who supplies funds to an employer for the payment of wages, knowing that the employer does not intend or will not be able to pay those taxes.[1] The complaint alleged that during the relevant period the Bank supplied funds to Builders or for its account with knowledge that Builders did not intend or was not able to pay federal withholding taxes.

The Bank's answer consisted of a general denial. Neither in its answer nor at any time thereafter until trial did the Bank specifically deny that it had been a supplier of funds to Builders.

In 1976, the Bank moved for summary judgment on the ground that the loans to Builders were ordinary operating loans for general expenses, not specifically for paying wages. The district court granted the motion. On appeal this court, 556 F.2d 589, reversed, holding that material issues of fact remained in dispute.

On March 28, 1978, appellant and the Bank entered into a pretrial order which included a statement of agreed facts and a summary of each party's contentions. Paragraph 20 of the agreed facts stated:

> Numerous loans and advances were made by the [Bank] together with various participating Banks or other affiliated entities between March 16, 1970, and December 31, 1971.

The Bank's contentions set forth in the pretrial order were in substance that (1) it did not have the requisite knowledge, (2) Builders was always able to pay the taxes, (3) the loans it made were ordinary working capital loans not for the specific purpose of paying wages, (4) the taxes owing by Builders had been paid, and (5) the action was barred by the statute of limitations and laches.

On the first day of trial the Bank moved for summary judgment on the ground that it had not been a supplier of funds. After appellant submitted an offer of proof as

---

1. Section 3505(b) provides:

(b) Personal liability where funds are supplied.—If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment or deposit of the amounts of tax required by this subtitle to be deducted and withheld by such employer

from such wages, such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes (together with interest) which are not paid over to the United States by such employer with respect to such wages. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied to or for the account of such employer for such purpose.

directed by the trial court, the court granted the motion. It held that the Bank, having only acted as agent for the participating banks in arranging for loans to Builders, had not supplied funds. It further held that the Bank had not supplied funds by honoring Builders' temporary overdrafts. The government now appeals from the judgment entered for the Bank.

### Effect of the Pretrial Order

Appellant argues that it was error for the trial court to award judgment to the Bank on a theory which was not included among the Bank's contentions in the pretrial order and was at variance with the agreed facts stated in that order.[2]

Rule 16, Fed.R.Civ.P., states in relevant part:

> The court shall make an order which recites the action taken at the [pretrial] conference . . . and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modi-

fied at the trial to prevent manifest injustice.[3]

Pretrial orders play a crucial role in implementing the purposes of the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action." F.R.Civ.P. 1. Unless pretrial orders are honored and enforced, the objectives of the pretrial conference to simplify issues and avoid unnecessary proof by obtaining admissions of fact will be jeopardized if not entirely nullified.[4] Accordingly, a party need offer no proof at trial as to matters agreed to in the order, nor may a party offer evidence or advance theories at the trial which are not included in the order or which contradict its terms.[5] Disregard of these principles would bring back the days of trial by ambush and discourage timely preparation by the parties for trial.

That is not to say that a pretrial order should not be liberally construed to permit evidence and theories at trial that can fairly be said to be embraced within its language.[6] But particular evidence or theories which are not at least implicitly included in the order are barred unless the order

---

**2.** The pretrial order stated that "numerous loans . . . were made by the . . . [Bank]," and that "Builders assigned to . . . [Bank] its rights under the Montana 10–5 contract as security for further loans by the bank." The Bank's contentions included the statement that "[Bank] contends that the loans it . . . made . . . were ordinary working capital loans." No contention was made that it did not supply funds.

**3.** Although the pretrial order in this case was never signed by the trial judge, it was signed by both counsel and filed and docketed by the clerk on March 28, 1978, and has been treated by the parties as a valid and effective order.

**4.** Rule 16 further provides that the court may hold a pretrial conference to consider
 (1) The simplification of issues; . . .
 (2) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof . . .

**5.** See 3 Moore's Federal Practice ¶ 16.19, pp. 16–42 to 16–46; 6 Wright & Miller, Federal Practice and Procedure § 1527, pp. 605–07. Exclusion by the trial court of contentions or evidence not listed in or disclosed in accord-

ance with the pretrial order has been repeatedly upheld. *Colvin v. U. S. for Use and Benefit of Magini, etc.*, 549 F.2d 1338, 1340 (9th Cir. 1977); *Federal Deposit Insurance Corp. v. Glickman*, 450 F.2d 416, 419 (9th Cir. 1971); *Rodrigues v. Ripley Industries, Inc.*, 507 F.2d 782, 787 (1st Cir. 1974); *Franklin Music Co. v. American Broadcasting Co.*, 616 F.2d 528, 539 (3d Cir. 1980); *Ely v. Reading Co.*, 424 F.2d 758, 764 (3d Cir. 1970); *Morgan v. Commercial Union Assurance Co.*, 606 F.2d 554, 556 (5th Cir. 1979); *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979); *Burdis v. Texas & Pacific Ry. Co.*, 569 F.2d 320, 323 (5th Cir. 1978); *Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 898 (8th Cir. 1978); *United States v. Rayco, Inc.*, 616 F.2d 462, 464 (10th Cir. 1980); *Rigby v. Beech Aircraft Co.*, 548 F.2d 288, 292 (10th Cir. 1977); *Monod v. Futura, Inc.*, 415 F.2d 1170, 1173 (10th Cir. 1969); *G & R Corp. v. American Security & Trust Co.*, 523 F.2d 1164, 1173 (D.C.Cir.1975).

**6.** 6 Wright & Miller, Federal Practice and Procedure § 1527, p. 609. *See Osborn v. Boeing Airplane Co.*, 309 F.2d 99, 101 (9th Cir. 1962).

is first "modified to prevent manifest injustice." Fed.R.Civ.P. 16.[7]

▮ Neither evidence that the loans to Builders during the relevant period were made by others than the Bank nor the contention that the Bank did not supply funds to Builders could be said to be included in the pretrial order even under the most liberal construction; in fact, that evidence and that contention are plainly contrary to the terms of the order.

▮ Under Rule 16, the trial court had authority to modify the pretrial order if in the court's discretion modification was determined to be necessary "to prevent manifest injustice." The court, however, did not purport to make a modification of the order before granting the Bank's motion for summary judgment. For the court to have properly exercised its discretion to modify the order, it would have hade to consider such factors as

(1) the degree of prejudice to the Bank resulting from a failure to modify;

(2) the degree of prejudice to plaintiff from a modification;

(3) the impact of a modification at that stage of the litigation on the orderly and efficient conduct of the case; and

(4) the degree of willfulness, bad faith or inexcusable neglect on the part of the Bank.[8]

Where, upon consideration of factors such as those, the court determines that refusal to allow a modification might result in injustice while allowance would cause no substantial injury to the opponent and no more than slight inconvenience to the court, a modification should ordinarily be allowed.[9] If necessary to prevent harm to the opponent, appropriate protective terms and conditions may be attached to the order allowing modification.[10] But where as here the court departs substantially from the order to the prejudice of a party without exercise of its discretion informed by consideration of the relevant factors, the judgment must be reversed.

### Summary Judgment

▮ Appellant further contends that the district court erred in granting summary judgment based on the record before it. Summary judgment may be granted only if it is demonstrated that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. An issue of fact affecting the outcome of the litigation requires a trial to resolve the parties' differing versions of the truth. *Mutual Fund Investors, Inc. v. Putnam Management Co.*, 553 F.2d 620, 624 (9th Cir. 1977). All the evidence and the factual inferences to be drawn from the evidence must be construed in the light most favorable to the party opposing the motion. *Id.*

Section 3505(b) imposes liability on a "lender, surety, or other person" who "supplies funds to or for the account of an employer for the specific purpose of paying wages," with notice or knowledge that the employer does not intend to or will not be able to pay the withholding taxes. Appellant argued that the Bank was liable on two theories: as an "other person" supplying funds by reason of having arranged loans to Builders on behalf of other banks with which it was affiliated, and as a "lender" because it honored Builders' substantial overdrafts on its commercial checking account. The district court entered judgment for the Bank on both claims.

▮ Internal Revenue Service regulations define "other person" as follows:

---

7. *Walker v. West Coast Fast Freight Inc.*, 233 F.2d 939, 942 (9th Cir. 1956).

8. *See, e. g., Jeffries v. United States*, 477 F.2d 52, 55 (9th Cir. 1973); *Meyers v. Pennypack Woods Home Ownership Assoc.*, 559 F.2d 894 (3d Cir. 1977); *Clark v. Pennsylvania Railroad Co.*, 328 F.2d 591 (2d Cir.), *cert. denied*, 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964).

9. *Globe Indemnity Co. v. Capital Ins. & Surety Co.*, 352 F.2d 236, 239 (9th Cir. 1965); *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1202 (3d Cir. 1978); *Sherman v. United States*, 462 F.2d 577, 579 (5th Cir. 1972).

10. *Laird v. Air Carrier Engine Service*, 263 F.2d 948, 953 (5th Cir. 1959).

As used in this section, the term "other person" means any person who directly pays the wages or supplies funds for the specific purpose of paying the wages of an employee or group of employees of another employer. It does not include a person acting only as agent of the employer or as agent of the employees." 26 C.F.R. § 31.3505–1(c)(1). The district court, relying on this definition, stated that "even if the loans were found to be arranged by the defendant Bank, only an agency relationship would have been created, preventing liability on the part of the Bank." That conclusion is based on a misconstruction of the language of the regulation which excludes from the term "other person" persons "acting only as an agent of the employer or as agent of the employees;" it does not exclude *any* other person who supplies funds simply because that person also happens to be an agent. The record before the court does not establish as a matter of law that the Bank acted *only* as an agent of the employer, *i. e.*, Builders. On the agency issue, therefore, material issues of fact remain, precluding entry of summary judgment.

The Bank further argues that it cannot be held liable as an "other person" if it did not supply its own funds. It contends that if it merely arranged for funds for Builders, whether as an agent for Builders or for other lending banks, it is not an "other person [who] supplies funds" within the meaning of the statute.

Section 3505(b) by its terms is not limited to persons supplying their own funds. The use of the words "other person" in conjunction with lenders and sureties, and the absence of any qualifying language, reflects an intention to reach any person who provides payroll financing. The regulations issued by the Internal Revenue Service are consistent with that interpretation, defining "other person" as "any person who directly pays the wages or supplies the funds for the specific purpose of paying the wages of an employee or group of employees of another employer." [11] The legislative history also supports that interpretation, showing that Congress sought to impose liability for withholding taxes on persons other than employers who directly or indirectly finance payrolls. *See United States v. Algernon Blair, Inc.*, 441 F.2d 1379, 1381 (5th Cir. 1971).[12]

A trial is therefore necessary to determine whether the activities of the Bank bring it within the purview of the statute.

The district court rendered judgment for defendant on the overdraft issue based on its determination that the Bank expected "reasonable prompt payment," that the overdrafts were repaid "without undue de-

11. *See also* the definition in Rev.Proc. 78–13, 1978–1 Internal Revenue Cum.Bull. 591–92, which states:

"other person" means any person similar to a lender or surety who directly pays or supplies the funds for payment of wages of employees of another. It does not include a person who is acting only as agent of the employer or as agent of the employees, for example, a union agent.

12. The Senate Report on the Federal Tax Lien Act of 1966 said with respect to Section 3505(b):

Under present law, only "employers" are liable for income, social security, and railroad retirement taxes required to be withheld and deducted from wages. There are cases, however, where persons other than the employers directly, or indirectly, pay the wages. Where this occurs, problems have arisen because, in some instances, these other persons have paid employees only the "net" wages and have not paid, either to the employees or to the Government, the withholding taxes due the Government. Under current law in these cases the employees receiving the net wages receive credit for the taxes required to be withheld, whether or not the Government is paid the amount of these taxes. While the employers in these cases are liable for the payment of the withholding taxes, they are likely to be without financial resources and, as a result, recourse against them may well be fruitless. Under current law, recourse cannot be taken against the third persons who directly or indirectly paid the net wages since they are not "employers" and, therefore, are not liable for the tax.

Your committee believes that where third persons finance employers' payrolls—subject to the conditions set forth below—they should be liable for the withholding taxes. S.Rep.No. 1708, 1966 U.S.Code Cong. & Adm. News 3722, 3742–43.

lay," and that "there are no loans by the Bank besides overdrafts that would infer [sic] that the overdrafts were in effect also meant to be loans to the taxpayer." The court reasoned that Congress could not have intended to expose banks to liability for withholding taxes merely by sporadically honoring temporary overdrafts while expecting reasonably prompt repayment.

 Under the proper circumstances, honoring of overdrafts may constitute a method for supplying funds within the reach of Section 3505(b). *Fidelity Bank, N. A. v. United States*, 616 F.2d 1181 (10th Cir. 1980); *see also United States v. Park Cities Bank & Trust Co.*, 481 F.2d 738 (5th Cir. 1973). Whether the overdrafts in this case result in liability for withholding taxes on the Bank's part depends on whether the evidence establishes that by honoring the overdrafts, the Bank "supplie[d] funds . . . for the specific purpose of paying wages . . . with actual notice or knowledge . . . that such employer does not intend to or will not be able to make timely payment or deposit of the . . . tax." A trial is required for the resolution of that issue. The following relevant factors among others should be considered by the court in making its determination:

(1) The agreements and understandings between the parties with respect to the honoring and repayment of overdrafts;

(2) The frequency, amount and duration of overdrafts;

(3) The purposes for which the funds obtained by overdrafts were used;

(4) The procedures for approval of overdrafts by bank officials;

(5) The transactions between the Bank and other participating banks with respect to overdrafts; and

(6) The documentary record relating to the overdrafts.

*Other Contentions*

 The Bank raises additional grounds in support of the judgment below. First, the Bank asserts that any funds supplied were nothing more than ordinary working capital loans, excluded under the regulations.[13] That contention, however, raises issues of fact requiring a trial.

 Second, the Bank contends that collection of any tax for the last quarter of 1970 is barred by the statute of limitations on assessments, the action having been filed more than three years after the return was filed. Section 6501(a) of the Internal Revenue Code, 26 U.S.C. § 6501(a), provides in relevant part that the amount of any tax "shall be assessed within 3 years after the return was filed." Builders' return for the last quarter of 1970 was filed on March 5, 1971. The Internal Revenue Service made its assessment on June 4, 1971, and on that date gave Builders, the taxpayer, notice and a demand for payment. The argument that no assessment was made within the three year limitation period against the Bank, the alleged supplier of funds under Section 3505(b), is frivolous inasmuch as the Code requires no separate assessment under Section 3505(b) against a supplier. *United States v. Dixieline Financial, Inc.*, 594 F.2d 1311, 1313 (9th Cir. 1979).

13. 26 C.F.R. § 31.3505–1(b)(3) provides in part:
(3) Ordinary working capital loan. The provisions of section 3505(b) do not apply in the case of an ordinary working capital loan made to an employer, even though the person supplying the funds knows that part of the funds advanced may be used to make wage payments in the ordinary course of business. Generally, an ordinary working capital loan is a loan which is made to enable the borrower to meet current obligations as they arise. The person supplying the funds is not obligated to determine the specific use of an ordinary working capital loan or the ability of the employer to pay the amounts of tax required by subtitle C of the Code to be deducted and withheld. However, section 3505(b) is applicable where the person supplying the funds has actual notice or knowledge (within the meaning of section 6323(i)(1)) at the time of the advance that the funds, or a portion thereof, are to be used specifically to pay net wages, whether or not the written agreement under which the funds are advanced states a different purpose. Whether or not a lender has actual notice or knowledge that the funds are to be used to pay net wages, or merely that the funds may be so used, depends upon the facts and circumstances of each case.

▆ The Bank argues alternatively that Congress meant the shorter limitations period imposed by 40 U.S.C. § 270a(d) to govern Section 3505(b) actions, because 40 U.S.C. § 270a(d) and Section 3505(b) were enacted together in Section 105 of the Federal Tax Lien Act of 1966, P.L. 89–719, 80 Stat. 1125. The limitation period in 40 U.S.C. § 270a(d), however, applies only to collection actions by the United States against government contractors, and has no bearing on the instant action.

▆ The Bank's final argument, that laches should bar this action, is without merit. Laches is not a defense to the enforcement of tax claims by the United States. *Olshausen v. Commissioner of Internal Revenue,* 273 F.2d 23, 28 (9th Cir.), *cert. denied,* 363 U.S. 820, 80 S.Ct. 1256, 4 L.Ed.2d 1517 (1960).

REVERSED AND REMANDED.