BENAVIDES, Circuit Judge,
with whom KING, W. EUGENE DAVIS, WIENER, RHESA HAWKINS BARKSDALE, CARL E. STEWART, and DENNIS, Circuit Judges, join, dissenting:
Disregarding months of active litigation, a bench trial in the district court, and three lengthy opinions on the merits by a panel of this Court, the majority today announces that the appellees never had standing to bring this suit in the first place. According to the majority, there is no proof in the record that the Does were *510 ever exposed to, and thus injured by, a prayer offered at a School Board meeting. I disagree. The Does plainly alleged that they had attended Board meetings and that they had witnessed the invocations offered there, and the Pretrial Order reveals that the Board conceded, this fact. Yet the majority sidesteps this record evidence, choosing instead to redraw the parameters of this dispute and assert that standing is now lacking. I dissent.
In their amended complaint, filed with the district court on November 26, 2003, the plaintiffs stated:
The Board meetings are open to the public, including students. Each Board meeting is opened with a prayer, followed by the pledge of allegiance. Board member Bardwellf ] has given the invocation. Plaintiffs, John Doe, James Doe, and Jack Doe, have been in attendance at school board meetings which were opened with a prayer.
Amd. Compl. ¶ 9 (emphasis added). In its answer, filed on January 26, 2004, the School Board denied the claim of attendance, but only for lack of information:
The allegation that meetings of the board are open to the public is admitted. The remaining allegations of Paragraph 9 are denied for lack of information sufficient to justify a belief therein.
Answ., Part VII, ¶ 9. Thus did the parties set the stage for the district judge: The plaintiffs alleged the crucial fact, plain as day, and the School Board responded that it did not yet have enough information to either admit or refute it.
At that time, the fact was legitimately in dispute. Seven months later, however, it was not. We know this much not due to any inference or assumption on our part, but because the district judge and the parties told us so in the Pretrial Order of August 18, 2004. That Order contains an enumerated list entitled “CONTESTED ISSUES OF FACT.” Pretrial Order at 10. Conspicuously absent from that list is anything about the Does’ attendance at the Board meetings. In other words, as of August 18, 2004, the School Board no longer contested the factual allegation that the Does had attended Board meetings. The only contested facts at that point relate to the merits of the case; they have nothing at all to do with standing.[1]
The Order goes on to say that if necessary, the plaintiffs could call John, James and Jack Doe to testify, and that all three would testify regarding the “[fjacts set forth in original and amending complaints, *511 particularly the events transpiring at the Tangipahoa Parish School Board Meeting.”[2] It explains that such live testimony may not be necessary, .however, because “[t]he issue in this case is purely legal.” Pretrial Order at 13 (emphasis added). This proved to be true. The parties agreed to have the case tried before a judge on stipulations, and no live witnesses were called to testify. This was possible solely because there were no longer any relevant facts in dispute, so no witness testimony, including that of the Does, was necessary. Viewed in context, the Pretrial Order and the pleadings provide ample record evidence that there was not, and indeed is not, any dispute about the fact of the Does’ attendance at the meetings.
This conclusion becomes all the more certain when we consider the nature and importance of pretrial orders in litigation. Federal Rule of Civil Procedure 16(e) states that pretrial orders “shall control the subsequent course of the action unless modified by a subsequent order.” Fed. R.Civ.P. 16(e). One purpose of the pretrial order is to put the parties on notice as to the evidence they must be prepared to present. Morris v. Homco Int’l, Inc., 853 F.2d 337, 342 (5th Cir.1988) (“The purpose of Rule 8(c), like the purpose of the requirement that the pretrial order contain all relevant claims and legal theories, is to inform the court and the parties how the case will be tried.”). In Shell Oil v. M/T GILDA, 790 F.2d 1209 (5th Cir.1986), we explained as follows:
A party need not offer proof as to matters not contested in the pre-trial order. A contrary holding would be inconsistent with the requirement that the pretrial order “shall control the subsequent course of the action unless modified by subsequent order”. Indeed, such a holding would not be consonant with the requirement of the first rule of the Rules of Civil Procedure: The rules “shall be construed to promote the just, speedy, and inexpensive determination of every action”.
Id. at 1215 (citing United States v. First Nat’l Bank of Circle, 652 F.2d 882, 886 (9th Cir.1981); Fed.R.Civ.P. 1, 16(e)) (emphasis added). To dismiss this case now for lack of standing violates that closing maxim, but worse yet, it creates a contested fact question where the parties and the district judge agreed there was not one.
Rule 16 and our precedent could not be more clear: Pretrial orders control the scope of the trial, and those facts not contested in the pretrial order are not up for debate at a later date, even if a majority of this court now wants to debate them. Since 1986, we have told litigants that “[a] party need not offer proof as to matters not contested in the pre-trial order.” Id. Today we are telling the Does that they had to do just that. This is not merely an “inconvenience” for the parties (and the district court); it is trial by ambush. First Nat’l Bank of Circle, 652 F.2d at 886 (“Disregard of these principles would bring back the days of trial by ambush and discourage timely preparation by the parties for trial.”).[3] “Unless pretrial orders are honored and enforced, the objectives of *512 the pretrial conference to simplify issues and avoid unnecessary proof by obtaining admissions of fact will be jeopardized if not entirely nullified.” Id. (citing Fed.R.CivP. 16).
The Pretrial Order in this case was perfectly typical. It came about as the product of a pre-trial conference held before the district judge. It concludes with a very explicit statement drawn directly from Fed.R.Civ.P. 16:
This Pre-Trial Order has been formulated after a conference at which counsel for the respective parties have appeared in person. Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.
Pretrial Order at 14 (emphasis added). The order is signed by the district judge and counsel for both parties. The parties must be held to their word, and we must be held to ours. The pretrial order controls, and the fact of the Does’ attendance is not up for debate.[4]
The record bears out that the Does attended School Board meetings at which prayers were offered. That exposure gave them standing to bring this suit then, and it gives them standing to maintain it now.[5] *513 They are entitled to a decision on the merits, and we should give them one. I dissent.

.The list reads as follows:

VIII. CONTESTED ISSUES OF FACT

1. Whether the meetings of the Tangipa-hoa Parish Board are an integral component of the Tangipahoa public school system?
2. Whether the opening of meetings of [a] public school board, particularly the Tangi-pahoa Parish School Board, with prayer is deeply embedded in the history of this country?
3. Whether public school boards are legislative and deliberative bodies akin to state legislative bodies?
4. Whether the act of board members, particularly Reverend Richardson, the board president, and the assistant superintendents, initiating and leading everyone in prayer prior to the commencement of board meetings sends a loud, clear message that the board favors religion and, in this case, Christianity?
5. Whether prayers given to solemnize present the same "coercive effect" inherent in the classroom at school-sponsored events like a football game?
6. Whether Defendants have exploited the board's practice of opening its meetings with a prayer to proselytize or advance any one, or to disparage any other, faith or belief?
7. The amount of attorneys' fees and costs, if any, Plaintiffs are entitled to recover[J
8. All issues of fact implicit in the contested issues of law.
Pretrial Order at 10.

. As has already been said, the amended complaint specifically asserts that the Does attended Board meetings and witnessed prayers. The original complaint states that they were offended by those prayers. See infra note 5.

. Ordinarily when we use this term, it is to express our concern that one party might ambush another. The irony in this case is that the trap was set not by one of the parties, but by a majority of this en banc Court. In fact, the parties conscientiously worked to move this case forward toward a ruling on the merits in a timely fashion. They conducted a productive pretrial hearing; they entered into a consent judgment that disposed of seven of the eight original claims; they stipulated *512 to all the necessary and relevant facts. They simply wanted an answer to the constitutional question presented. Small wonder, then, that the School Board did not mention standing in either its original or its en banc brief, the latter of which was filed after the panel addressed the question sua sponte. The reason for this is not that the School Board overlooked standing, but that standing was no longer an issue, nor could it have been given the procedural history of the case.

. The majority suggests in passing that the clause leaving open "[a]ll contested issues of fact implicit in the contested issues of law” can be read to encompass the facts at issue today. See supra note 1 (setting forth "Contested Issues of Fact”). This is a misreading of the clause, which does not refer generally to any issues of law that may someday become contested, but rather to the specifically enumerated "Contested Issues of Law,” set forth in the Pretrial Order. None of those issues has anything at all to do with standing, nor can any of them be read to implicate the discrete fact of the Does' attendance at the Board meeting. Of course, standing has become a contested issue now, but this is not the sort of legal contest that was envisioned or encompassed by the Pretrial Order.
Moreover, by the time this case went to trial, the parties had entered into a consent judgment that left the court with only a single "contested issue of law” to decide: Which case, Lemon or Marsh, governs prayers at a School Board meeting? The Does’ attendance at the Board meeting is not "implicit” in that legal question. The Does' attendance is implicated only by the question of standing, which is wholly separate from the merits of the case. See Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.”); Whitmore v. Ark., 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (quoting Warth v. Seldin, supra, 422 U.S. at 500, 95 S.Ct. 2197) ("[The] threshold inquiry into standing ‘in no way depends on the merits of the petitioner's contention that particular conduct is illegal.' ").

. Of course, this evidence speaks only to the "injury in fact” prong of the standing analysis, but that is the only prong at issue in this case. Neither the majority nor the School Board has suggested that this case poses any problems of causation or redressability. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (discussing three factors). I note also that, though I have focused solely on the question of the Doe’s attendance, there is also no dispute that the Does were offended by the prayers they witnessed, which is necessary to show injury in fact. They explicitly alleged as much in their original complaint, see Orig. Compl. ¶ 14., and this fact was not *513 in dispute by the time the parties and the court signed the pre-trial order.