**NORTHWEST AIRLINES, INC.,**
**a Minnesota Corporation,**
**Plaintiff,**

v.

**ASTRAEA AVIATION SERVICES, INC.,**
**d/b/a Dalfort Aviation, a Texas**
**Corporation, Defendant.**

**Civil No. 3–95–704.**

United States District Court,
D. Minnesota,
Third Division.

June 18, 1996.

Thomas Tinkham, Perry M. Wilson III, Peter W. Carter, and Nicholas A.J. Vlietstra, Dorsey & Whitney LLP, Minneapolis, Minnesota, for Plaintiff.

Francis B. Majorie and Keith P. Ray, Levine and Majorie, Ltd., Dallas, Texas, and Scott A. Wold and Kenneth Corey–Edstrom, Henningson & Snoxell, Ltd., Minneapolis, Minnesota, for Defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Background

The procedural posture of this case is, briefly, as follows. On July 12, 1995, Defendant Astraea Aviation Services, Inc., d/b/a Dalfort Aviation ("Dalfort") filed an action in Texas state court against Plaintiff Northwest Airlines, Inc. ("Northwest") and a Texas resident asserting breach of contract and various common-law claims, and effected service upon Northwest on July 18. On July 14, Northwest commenced the present action in Dakota County District Court and effected personal service on Dalfort on that date. On July 31, 1995, Dalfort removed the Dakota County action to this Court.

Soon after removal, Dalfort filed a Motion to Dismiss or Transfer in this Court. After briefing and oral argument, the Court denied the Motion in a Memorandum Opinion and Order dated December 22, 1995, finding that it possessed personal jurisdiction over Dalfort and that venue was properly laid in the District of Minnesota.

Northwest then brought a Motion for Partial Summary Judgment with respect to six counterclaims asserted by Dalfort. These counterclaims are the same as a number of the claims asserted by Dalfort as plaintiff in the Texas state court action. After briefing and oral argument, this Court, in a Memorandum Opinion and Order dated May 13, 1996, dismissed Dalfort's punitive damages claims[1] as well as the following counterclaims: Count One (defamation based on Northwest's statements to the press, Dalfort's customers, and others); Count Two (defamation based on Northwest's statements to the Federal Aviation Administration ("FAA") and others concerning Dalfort's alleged incompetence; Count Five (fraudulent and negligent misrepresentation); Count Six (unjust enrichment); and Count Seven (violation of the Texas Deceptive Trade Practices Act ("TDTPA"). The Court also granted the Motion as to Dalfort's claims for additional compensation for work performed on the first five DC9–51 aircraft under Contract B. The Court denied the Motion as to Count Four of Dalfort's counterclaims, which contained claims for breach of contract.

1. At the same time it ruled on Northwest's Motion, the Court denied Dalfort's Motion to Dismiss Northwest's Affirmative Defense Under Section 549.191 Or, in the Alternative, for Leave to File a Motion to Amend to Add Punitive Damages Claims. The parties agreed that the Court should decide the merits of Dalfort's request to assert punitive damages claims at that time. The Court determined that Minnesota law applied to the assertion of punitive damages, and that Dalfort had not demonstrated that it should be allowed to amend its pleadings to add a claim for punitive damages. *See* Mem.Op. & Order (May 13, 1996) 10–13.

Meanwhile, Northwest had filed a plea in abatement before the Texas court on August 14, 1995. A hearing was had on that motion on February 28, 1996, and the Texas court took the matter under advisement.

On May 22, 1996, nine days after this Court's Memorandum Opinion and Order was entered, Dalfort moved the Texas court for an order setting the matter for trial on June 24, 1996, or granting priority to the case on the jury trial docket. The Texas case had been previously placed on the June 24, 1996 jury trial docket along with a number of other cases by virtue of a Pre–Trial Scheduling Order dated January 9, 1996. Def.'s Ex. 3.[2]

In this action, the parties were notified, in a pretrial scheduling order from Magistrate Judge Ann Montgomery dated September 7, 1995, to be ready for trial on July 1, 1996. Def.'s Ex. 7. A later Notice of Assignment of Cases for Trial, dated February 9, 1996, scheduled this case, with others, for trial as of July 1, 1996 (Doc. No. 54). The July setting was confirmed by the Court during oral argument on Northwest's Motion for Summary Judgment. Finally, a Notice of Jury Trial filed on May 28, 1996, informed the parties that the trial was set for a day certain—July 10, 1996, at 9:30 a.m. (Doc. No. 97).

After holding a hearing on Dalfort's motion, starting May 30, 1996, and continuing on June 4, 1996, the Texas court granted Dalfort's motion and set the matter down for trial on June 24, 1996.[3] The Texas court also denied Northwest's plea in abatement at the same time.

Northwest has now moved this Court, pursuant to Federal Rule of Civil Procedure 54(b),[4] for an order directing the entry of a final judgment as to those Counts in Dalfort's Counterclaims which were dismissed or otherwise resolved in its May 13, 1996 Memorandum Opinion and Order. By doing so, Northwest seeks to preclude relitigation in Texas state court of Dalfort's claims which this Court has previously dismissed. Northwest also asks the Court to enjoin the parties and the Texas state court from proceeding further on all claims pursuant to an exception to the Anti–Injunction Act. The Act states:

> A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The final exception, known as the "relitigation exception," is invoked by Northwest, which claims that an injunction must issue to "protect or effectuate" the May 13, 1996 Memorandum Opinion and Order. Northwest requests, in the alternative, that this Court advance this case for a trial date before June 24, 1996, so that it will proceed ahead of the Texas action.[5]

### Analysis

#### I. Rule 54(b)

Northwest requests the Court to enter a final judgment, pursuant to Rule 54(b), as to

---

2. A computerized, unsigned order from the Texas court, dated May 13, 1996, was apparently sent to counsel, notifying them of a trial date of October 21, 1996. Def.'s Ex. 8. At the hearing on Dalfort's motion for a special setting, however, the Texas court made clear that the order was in error, and that the case was still on the docket for June 24, 1996. Pl.'s Ex. 3, at 31–32.

3. A motion for partial summary judgment, brought by Northwest and similar to the Motion considered by this Court in its May 13, 1996 Memorandum Opinion and Order, is scheduled to be heard by the Texas court on June 20, 1996, four days before trial.

4. Rule 54(b) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

5. The Court informed the parties at oral argument that the Minnesota trial date would not be advanced.

those Counts in Dalfort's Counterclaims which were determined in the May 13, 1996 Memorandum Opinion and Order under Rule 54(b). After entering judgment, the argument goes, the previous Memorandum Opinion and Order could qualify as a "judgment" in the language of the Anti–Injunction Act, and this Court could effectively stay reconsideration of the issues already decided by this Court in the Texas state court by enjoining the future prosecution of that case.

■ The May 13, 1996 Memorandum Opinion and Order as it stands is neither a final dismissal nor a final judgment. Under Rule 54(b), a court may vacate or modify a partial summary judgment order at any time unless that court has directed the entry of a final judgment and made an express determination that there is no just reason for delay.

### A. Consideration of Res Judicata Effects Is Proper

■ Northwest contends that entry of final judgment under Rule 54(b) is "appropriate for the purpose of creating res judicata effects elsewhere." Pl.'s Brief 7. This argument implies that a final judgment may be entered under Rule 54(b) solely to give an order preclusive effect in another proceeding. At least three Circuits have noted that a Court may consider res judicata effects of a Rule 54(b) certification, but such consideration must occur in conjunction with other factors. *Shamley v. ITT Corp.*, 869 F.2d 167, 170 (2d Cir.1989); *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir.1987); *Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944, 949–50 n. 7 (7th Cir.1980). Yet two of these Circuits held that an *otherwise permissible* order under Rule 54(b) would be proper even if it was designed to produce res judicata effects. *Shamley*, 869 F.2d at 170–71; *Continental Airlines*, 819 F.2d at 1525. The other notes that res judicata effects must be weighed with the other factors to determine if Rule 54(b) may be applied. *Bank of Lincolnwood*, 622 F.2d at 949–50 n. 7.[6] Follow-

ing these precedents, this Court will determine the res judicata effect of the order requested by Northwest in conjunction with the traditional principles applied by courts to Rule 54(b) motions.

### B. Traditional Principles of Rule 54(b)

■ In *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), the Supreme Court outlined the steps for a district court to follow in making determinations under Rule 54(b). First, the Court must determine that it is dealing with a "final judgment"—one which is a decision upon a cognizable claim for relief and represents an ultimate disposition of an individual claim in a multiple-claim action. 446 U.S. at 7, 100 S.Ct. at 1464 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)). Next, the Court must determine whether there is any just reason for delaying the entry of judgment—which will permit an appeal of the finally decided issues. "[A] district court must take into account judicial administrative interests as well as the equities involved." 446 U.S. at 8, 100 S.Ct. at 1465. The first step of the test requires finality, with no room for the district court to exercise its discretion; the second step, in contrast, contemplates that the district court will weigh competing factors, and that its determination will be given substantial deference. 446 U.S. at 10, 100 S.Ct. at 1466.

#### 1. Finality

■ A district court cannot, in the exercise of discretion, take its disposition of claims which is not "final" and make it "final" merely by virtue of certification under Rule 54(b). *Mackey*, 351 U.S. at 437, 76 S.Ct. at 900. In *Mackey*, the plaintiff advanced four claims: violation of the Sherman Antitrust Act, willful destruction of business, breach of contract, and a combination of unfair competition and patent infringement. The Court

---

6. The Seventh Circuit noted that, "[i]n determining whether there is no just reason for delay, the district court may properly consider all of the consequences of a final judgment or the lack thereof and balance the competing interests of the parties in the context of the particular case."

*Id.; see also Local P–171 v. Thompson Farms Co.*, 642 F.2d 1065, 1072 (7th Cir.1981) (district court's power to grant certification limited by necessity to "weigh the virtues of accelerated judgment against the possible drawbacks of piecemeal review.").

noted, in discussing whether the requisite "final judgment" existed, that the first two claims were not "inherently inseparable" from the last two claims, and that the antitrust claim had an independent basis of liability. 351 U.S. at 436–37 & n. 9, 76 S.Ct. at 900 & n. 9. "Finality" has been found to exist by courts when the district court has disposed of all the rights and liabilities of at least one party to at least one claim. *See, e.g., Credit Francais Int'l. S.A. v. Bio–Vita, Ltd.,* 78 F.3d 698, 707 (1st Cir.1996) (citing *Curtiss–Wright* ). However, the definition of "claim" has given rise to much debate.

A number of Circuits have determined that "claim" in the context of Rule 54(b) means the set of operative facts which give rise to an enforceable right. *See, e.g., General Acquisition, Inc. v. GenCorp, Inc.,* 23 F.3d 1022, 1028 (6th Cir.1994) (citations omitted); *Hudson River Sloop Clearwater, Inc. v. Department of Navy,* 891 F.2d 414, 418 (2d Cir.1989); *Minority Police Officers Ass'n v. City of South Bend,* 721 F.2d 197, 200–01 (7th Cir.1983). The Eighth Circuit appears to use a "same nucleus of operable fact" definition of a claim. *Reyher v. Champion Int'l Corp.,* 975 F.2d 483, 487 (8th Cir.1992) (quoting *Ruple v. City of Vermillion,* 714 F.2d 860, 861 (8th Cir.1983), *cert. denied,* 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984)). However, the Supreme Court has explicitly rejected the proposition that claims can never be separate for Rule 54(b) purposes if they arise out of the same factual setting. *See Minority Police Officers,* 721 F.2d at 200 (citing *Sears, Roebuck,* 351 U.S. at 436, 76 S.Ct. at 900; *Cold Metal Process Co. v. United Eng. & Foundry Co.,* 351 U.S. 445, 451–52, 76 S.Ct. 904, 908–09, 100 L.Ed. 1311 (1956)).

■ A number of courts have observed that the line between deciding one claim out of many, or only part of a single claim, can become quite blurred. *See, e.g., Sussex Drug Prods. v. Kanasco, Ltd.,* 920 F.2d 1150, 1154 (3d Cir.1990); *Page v. Preisser,* 585 F.2d 336, 339 (8th Cir.1978). It is clear, however, that a claimant who presents a number of alternative legal theories, but whose recovery is limited to only one of them, has only a single claim of relief for Rule 54(b) purposes. *Id.; Sussex Drug,* 920 F.2d at 1154 (citations omitted). In order to determine whether a "final judgment" may be entered under the first step of *Curtiss–Wright,* Dalfort's remaining claims for breach of contract, as to which summary judgment was denied, must be compared to the dismissed claims.

■ The defamation claims (Counts One and Two of Dalfort's Counterclaims) pass the "finality" prong of the Rule 54(b) analysis as they seek recovery for wrongs separate from the breach of contract claim. So too does the misrepresentation claim (Count Five); although connected to the alleged breach of contract, the claim is based on promises made by Northwest before entering into the contracts. *See* Answer ¶¶ 216–23; Mem.Op. & Order (May 13, 1996) 31–35. While the claims do possess some overlapping facts, the overlap is not complete. "If however there is some but not complete factual overlap between nominally separate claims, this circumstance should invite an exercise of discretion by the district court rather than a determination by us that the retained and appealed claims are or are not separate." *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.,* 908 F.2d 1363, 1367 (7th Cir.1990).

■ The unjust enrichment claim (Count Six) touches upon the same contractual relationship, but will not require proof of the same facts as the remaining breach of contract claim. *See, e.g., Samaad v. City of Dallas,* 940 F.2d 925, 932 (5th Cir.1991) (finding separate claims for relief for Rule 54(b) purposes when "each claim require[d] proof of facts that the other does not."). This claim concerns a separate agreement, subsequent to the execution of the three contracts at issue, in which Dalfort alleges that Northwest agreed to compare Dalfort's work to similar work performed by another company and "true up" the amount paid to Dalfort. Answer ¶¶ 233–36. Obviously, this latter oral agreement, if Dalfort's claim were to be enforced, requires proof of different facts than in Dalfort's counterclaim concerning breach of the written contracts. Thus, this claim is also separate.

■ Dalfort has based its TDTPA counterclaim (Count Seven) on some of the same facts on which its surviving breach of

contract claim is based. Dalfort also incorporated some of the same facts underlying its defamation and misrepresentation claims, which has already been determined to be separate from the breach of contract claim, into its TDTPA claim. *See* Answer ¶ 256; Mem.Op. & Order (May 13, 1996) at 37 & n. 16. While portions of the TDTPA claim appear to be based on the "same nucleus of operable fact" as the surviving claim, the overlap is not complete. *Reyher,* 975 F.2d at 487; *see also Gerardi v. Pelullo,* 16 F.3d 1363, 1369–70 (3d Cir.1994). The Court has also previously determined that the TDTPA does not apply to Dalfort's claims, and even if it did, the TDTPA would not allow recovery. The May 13, 1996 Memorandum Opinion and Order finally determined all of the issues in Count Seven of Dalfort's Counterclaims. Dalfort has not challenged this determination before this Court.[7] Given that the Court found the TDTPA claim inapplicable in all respects, the Court believes that entry of judgment as to this claim is warranted.

 That part of the May 13, 1996 Memorandum Opinion and Order granting summary judgment as to the first five DC9–51s of Contract B represents a discrete portion of the larger breach of contract. It is well-settled that the determination to enter judgment as to one claim among multiple claims "must dispose of that claim *entirely.*" *Monument Mgmt. Ltd. Ptnp. I v. City of Pearl, Miss.,* 952 F.2d 883, 885 (5th Cir. 1992); *see also Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 43 (1st Cir.1988) (citations omitted). As to these aircraft, however, the Court based its decision on Northwest's showing of a meritorious "accord and satisfaction" affirmative defense. A court's *dismissal* of an affirmative defense, the Third Circuit has held, is not a proper subject on which to enter judgment under Rule 54(b). *National Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.,* 28 F.3d 376, 381–82 (3d Cir.1994). Yet, by granting the affirmative defense as to the first five

aircraft, Dalfort's interest in the work performed on those aircraft was "adjudicated to finality." *Id.* at 382. No other argument or defense must be heard to enter final judgment on this matter. Indeed, the accord and satisfaction represents a separate agreement of the parties, entered into after the Contracts were executed and the work completed—the "nucleus of operative facts" are quite different from the remainder of Dalfort's breach of contract claim, as the crux of the controversy is centered around negotiations *after* Dalfort had performed on the original contract. *See Reyher,* 975 F.2d at 487. Thus, there is no bar to directing the entry of final judgment as to this portion of the Memorandum Opinion and Order.

 Finally, there is the issue of the dismissal of Dalfort's claim for punitive damages. At least two circuit courts have explicitly held that a claim for punitive damages is not "separate and distinct" from the underlying claim, and thus does not constitute a separate claim under Rule 54(b). *Arizona State Carpenters Pension Trust Fund v. Miller,* 938 F.2d 1038, 1040 (9th Cir.1991); *Sussex Drug Prods. v. Kanasco, Ltd.,* 920 F.2d 1150, 1155 (3d Cir.1990). The Court believes that its decision on Dalfort's attempt to plead punitive damages does not have the requisite finality, and thus, that portion of the judgment will not be entered under Rule 54(b).

## 2. No Just Reason for Delay

██ Next, the Court must determine whether there is any just reason for delaying the entry of judgment with respect to the finally decided issues. "[A] district court must take into account judicial administrative interests as well as the equities involved." 446 U.S. at 8, 100 S.Ct. at 1465. "Judicial administrative interests" include whether the claims under review are separable from the others and whether the nature of the claims

---

7. The entry of judgment under Rule 54(b) is usually not warranted if a party sets forth the same facts but characterizes them under different legal theories. *Olympia Hotels,* 908 F.2d at 1367. Yet, in this case, the TDTPA has been found inapplicable in all respects. If this decision is appealed, the Eighth Circuit would only need to decide whether this Court's choice-of-law

determination is correct with respect to the TDTPA. If the Eighth Circuit reverses that determination, a subsequent appeal would address the facts underlying the TDTPA claim. Thus, although two appeals are a possibility, they would not be based on the same underlying facts, and the issues on appeal would be different.

already determined are such that an appellate court would have to decide the same issues more than once even if there were subsequent appeals. *Id.* However, the Supreme Court cautioned:

> We do not suggest that the presence of one of these factors [the potential for a piecemeal appeal or inseparable claims] would necessarily mean that Rule 54(b) certification would be improper. It would, however, require the district court to find a sufficiently important reason for nonetheless granting certification....

446 U.S. at 8 n. 2, 100 S.Ct. at 1465 n. 2.

### a. Judicial Administrative Interests

■ Northwest contends that the "interest of sound judicial administration" will be served here by the entry of judgment under Rule 54(b), as the Texas state court will be precluded from reviewing those claims which this Court has dismissed, and will thus not waste its efforts on matters already decided. This is true; yet the "judicial administrative interests" contemplated by Rule 54(b) and the Supreme Court in *Curtiss–Wright* are primarily those of the appellate courts:

> We acknowledge that the district court has a full calendar and wishes to avoid duplicative litigation; however, courts of appeals are busy courts too. More importantly, the scope of our jurisdiction requires us to shun piecemeal and interlocutory appeals.

*United States·Fire Ins. Co. v. Smith Barney, Harris Upham & Co.,* 724 F.2d 650, 652 (8th Cir.1983). The Eighth Circuit strongly disfavors piecemeal appeals. *Interstate Power Co. v. Kansas City Power & Light Co.,* 992 F.2d 804, 807 (8th Cir.1993); *Bullock v. Baptist Memorial Hosp.,* 817 F.2d 58, 59 (8th Cir.1987); *Burlington N. R.R. Co. v. Bair,* 754 F.2d 799, 800 (8th Cir.1985).

■ The *Curtiss–Wright* standard cautions district courts not to direct the entry of judgment under Rule 54(b) which would require an appellate court to decide the same issue or familiarize itself with the same set of facts more than once. "A similarity of legal or factual issues will weigh heavily against entry of judgment· under [Rule 54(b)]." *Hayden v. McDonald,* 719 F.2d 266 (8th Cir.1983) (quotation omitted).

■ However, factual similarity is not the only factor to consider. The Eighth Circuit has repeatedly cited with approval a list of factors for district courts to consider in making certification decisions:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Hayden v. McDonald,* 719 F.2d 266, 269 (8th Cir.1983) (quoting *Allis–Chalmers Corp. v. Philadelphia Elec. Co.,* 521 F.2d 360, 364 (3d Cir.1975)); *see also In re Flight Transp. Corp. Secs.,* 825 F.2d 1249, 1251 (8th Cir. 1987) (citing *Allis–Chalmers* ).

The Court has already discussed the relationship between the adjudicated and unadjudicated claims. While the dismissed and surviving claims both arise out of the same contractual relationship, the "nucleus of operative fact" varies to some degree from claim to claim, except for the punitive damages issue. Yet, given the distaste for piecemeal review, this factor weighs against the entry of judgment.

Second, the need for review by the Eighth Circuit may be mooted by future developments either in this Court or the Texas court. For example, the issues resolved by the May 13, 1996 Memorandum Opinion and Order may be resolved in the same manner by the Texas court, or the Texas court may give preclusive effect to the Court's ruling. If either happens, the need for immediate review of this Court's Memorandum Opinion and Order would be greatly diminished. This factor does not favor the entry of judgment.

As to the third factor, the Eighth Circuit may need to consider this case twice: on appeal from this Memorandum Opinion and Order, and on appeal after trial. Yet one or both of these appeals may be mooted by

developments in the Texas litigation. Moreover, if successive appeals are heard by the Eighth Circuit, the issues it will need to consider will not be identical. This factor does not weigh in favor of either option.

Fourth, while competing claims certainly exist, there appears to be no possibility of set off—only some of Dalfort's claims were dismissed, and no money judgment was entered in favor of either party. This factor favors entry of judgment.

If the Court's consideration stopped here, it would not enter partial final judgment on any portion of its previous Memorandum Opinion and Order, as the Court observed at oral argument on June 14, 1996. Yet the Court is also instructed to balance the "equities" of the situation, the consideration of which may be combined with the final *Allis–Chalmers* factor (taking into account "miscellaneous" consequences of entering judgment). The equities strongly warrant the entry of judgment under Rule 54(b).

### b. Equities

The Court should, and in this situation perhaps must, consider the res judicata effects of directing the entry of a final judgment as to the dismissed claims. Here, application of claim preclusion principles would both conserve judicial resources at the trial court level and would prevent the unseemly "end run" attempted by Dalfort.[8]

 Given the particular circumstances of this case, the equities warrant entry of judgment under Rule 54(b), notwithstanding the policies against piecemeal appeals, the existence of some overlapping facts, and the continuing litigation between the parties. "While there is an economic preference for all claims in a particular case to move to the appeal stage together, a demonstration of clear injustice or hardship resulting from delaying a final judgment on a particular question may justify certification." *Darr v. Muratore*, 8 F.3d 854 (1st Cir.1993); *cf. Bair*, 754 F.2d at 800 (noting no showing of hardship or injustice has been made). Moreover, "the Rule 54(b) claims do not *have* to be separate from and independent of the remaining claims." *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 468 (9th Cir.1987) (citing *Alcan Aluminum Corp. v. Carlsberg Fin. Corp.*, 689 F.2d 815, 817 (9th Cir.1982)) (emphasis in original). The injustice, both to Northwest and this Court, is manifest. While, under normal circumstances, this Court would not certify the remaining elements of its May 13, 1996 Memorandum Opinion and Order, the situation demands no less.[9]

8. Although the trial date of June 24 had been set by the Texas court in advance, it cannot be seriously argued that Dalfort did not attempt to solidify that date by its motion before that court less than ten days after the May 13, 1996 Memorandum Opinion and Order was issued. Dalfort specifically told the Texas court that the Memorandum Opinion and Order was neither persuasive nor binding. *See, e.g.*, Pl.'s Ex. 3, at 19–23. The appearance and motion by Dalfort in Texas court was clearly designed to bring the Texas case to trial before this Court's July 10 trial date. Dalfort's efforts to secure priority as to the Texas trial date came only after it participated in the summary judgment proceeding in this Court— and lost.

9. Dalfort asserts that this Court should follow the "first-filed rule," which states that, in the absence of compelling circumstances, the first-filed action should be allowed to proceed to trial while the later-filed action is restrained. *See Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1004–05 (8th Cir.1993). This argument is unconvincing. First, the rule is generally only applied to concurrent cases in federal court. Id. at 1004. Second, while called "the first-filed rule," the language of the rule is that "the first court *in which jurisdiction attaches has* priority to consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir.1985) (emphasis added). It is undisputed that, under Minnesota law, jurisdiction attached in the Dakota County District Court when Dalfort was personally served—in the Texas system, it appears that one element of personal jurisdiction also attaches when personal service is effected. *See Ex Parte Bowers*, 671 S.W.2d 931, 935 (Tex.Ct.App.1984). This would mean that jurisdiction first attached in this case. Finally, the rule is one of flexibility, to be applied in a manner serving "sound judicial administration." *Northwest Airlines*, 989 F.2d at 1004–05. The blatant forum shopping here would compel the Court to disregard the rule, even if it applied to favor the Texas proceeding, in the interest of sound judicial administration. Also, if the first filer has notice of the second filer's intention to file, and "raced to the courthouse to be first," the first-filed rule carries less weight. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 896 F.Supp. 1468, 1474 (N.D.Iowa 1995) (citing *Northwest Airlines*). Dalfort's counsel acknowledged that the race occurred here, citing it as a reason why the Texas case should go to trial first: "[W]e're simply saying that we beat them to the courthouse in the race." Pl.'s Ex. 3, at 24.

Given the unique circumstances of this case, this Court determines that there is no just reason for delay in directing the entry of a final judgment on the issues addressed in its May 13, 1996 Memorandum Opinion and Order,[10] except for the punitive damages issue. The Court expressly directs the entry of a final judgment on each of the issues considered and determined in that Memorandum Opinion and Order, with the exception noted above.[11]

## II. Injunction

The Court now turns to Northwest's request to enjoin the parties from proceeding in the Texas litigation. Northwest's request is based on what has been termed the "relitigation exception" to the Anti–Injunction Act: "A court of the United States may not grant an injunction to stay proceedings in a state court except ... where necessary ... to protect or effectuate its judgments." 28 U.S.C. § 2283. Essentially Northwest argues that an injunction should issue to prevent Dalfort from litigating issues before the Texas court which it has previously litigated here and lost.

▉▉▉▉▉ It should first be noted, however, that Northwest's requested injunction is too broad. The Court has ruled on only some of the issues in the case, not on all of them. The Anti–Injunction Act only gives a federal court the power to enjoin a state proceeding in order "to protect or effectuate its judgments." 28 U.S.C. § 2283. This Court has not, for example, entered final judgment on any of the breach of contract claims involved here—thus, enjoining the entire proceeding is unwarranted and contrary to the congres-

sional policy expressed in the Anti–Injunction Act. The relitigation exception only permits a district court to enjoin a state court from litigating claims and issues that the district court has already decided. *National Basketball Association v. Minnesota Professional Basketball, Ltd. Ptnp.*, 56 F.3d 866, 872 (8th Cir.1995) (citations omitted). Thus, were an injunction to issue, it would be limited to those issues previously determined by this Court and on which final judgment has been entered pursuant to Rule 54(b). That would leave the Texas state court free to proceed with the other claims if it determined that such a course of action was appropriate.

It is instructive to examine a case in which a federal court was held to have the power to stay a state court's decision on an issue similar to those here under the relitigation exception. In *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988), the Supreme Court considered a case where a federal district court had previously concluded that applicable choice-of-law principles required that Singapore law should apply. The district court had then dismissed the case on federal forum non conveniens grounds. The plaintiff subsequently filed suit in Texas state court under Texas statutes and Singapore law, but the federal district court enjoined the plaintiff, under the relitigation exception to the Anti–Injunction Act, from prosecuting *any* claims in state court.

The Supreme Court found the injunction to be too broad, insofar as the district court enjoined the state courts from considering

The Court further notes that the cases cited by Dalfort in support of the proposition that a federal court cannot enjoin a state action, even if the federal action was filed first, relate to the "necessary in aid of its jurisdiction" exception to the Anti–Injunction Act. Dalfort's Expedited Response 16–17. The relitigation exception ("necessary to protect or effectuate its judgments") is the one that would be at issue here.

**10.** Dalfort argues that the Court must strike down all of its reasons not to enter partial final summary judgment in order to find "no just reason for delay." This is not so, as the Supreme Court has clearly indicated that the Court's determination here is based on a weighing of factors favoring and disfavoring certifica-

tion. *See Curtiss–Wright*, 446 U.S. at 8–10, 100 S.Ct. at 1465–66.

**11.** Dalfort has made it apparent to this Court as well as to the Texas court that it intends to reargue that Texas law should apply to some of the dismissed claims. However, as to the claims on which judgment has been entered pursuant to Rule 54(b), Dalfort is precluded from arguing that another jurisdiction's law applies to those claims. This Court's determination of the applicable law is part and parcel of its final resolution of the entire "claim," and thus, if collateral estoppel is applied, the choice-of-law determination cannot be relitigated. The Court has no grounds to believe that the Texas court will reason otherwise. *See infra* note 12.

the plaintiff's claim under *Singapore* law. The district court had ruled that Singapore law applied, but since it had not discussed the merits of the plaintiff's claims under Singapore law, it could not bar a state court's examination of those claims. However, the Supreme Court reached a different conclusion with respect to the enjoining of the plaintiff's claims under Texas law:

> [P]etitioner asserts a claim under Texas state law. In contrast to the Singapore law claim, the validity of this claim was adjudicated in the original federal action. Respondents argued to the District Court in 1980 that under applicable choice-of-law principles, the law of Singapore must control petitioner's suit.... The District Court expressly agreed, noting that only two of the eight relevant factors "point toward American law," and concluding that the "statutory and maritime law of the United States should not be applied." ... Petitioner seeks to relitigate this issue in state court by arguing that "there are substantial and/or significant contacts" with the United States such that "the application of American and Texas law is mandated." ... Because in its 1980 decision the District Court decided that Singapore law must control petitioner's lawsuit, a decision that necessarily precludes the application of Texas law, an injunction preventing relitigation of that issue in state court is within the scope of the relitigation exception to the Anti–Injunction Act. Accordingly, insofar as the District Court enjoined the state courts from considering petitioner's claim under the substantive law of Texas, the injunction was permissible.

486 U.S. at 150–51, 108 S.Ct. at 1691–92 (citations omitted).

▇▇▇ The result in *Chick Kam Choo*, as other courts have noted, comports with the relitigation exception's aims of "preventing the costly and judicially wasteful redetermination of issues in state court" and ensuring "the effectiveness and supremacy of federal law." *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 721 (5th Cir.1990) (citations omitted); *Daewoo Electronics Corp. of Am. v. Western Auto Supply Co.*, 975 F.2d 474, 477 (8th Cir.1992) (citations omitted). The relitigation exception is founded on no-

tions of collateral estoppel and res judicata. *Chick Kam Choo*, 486 U.S. at 149, 108 S.Ct. at 1690.

The facts here are similar to *Chick Kam Choo*. In its May 13, 1996 Memorandum Opinion and Order, the Court determined that Minnesota, not Texas, law applied to Dalfort's various tort claims. The materials submitted to the Court clearly demonstrate that Dalfort intends to relitigate the question of which state's law applies in front of the Texas court.

There is, however, one important difference which illustrates the necessity of Northwest's dual requests for Rule 54(b) certification *and* an injunction within the relitigation exception to the Anti–Injunction Act. The district court in *Chick Kam Choo* dismissed the plaintiff's entire case on forum non conveniens grounds in 1980; this was a final "judgment" protected by the relitigation exception. *See, e.g., Quintero*, 914 F.2d at 720–21.

In *National Basketball Association*, the Eighth Circuit explained that the relitigation exception should be confined to judgments which carry "enough significance and finality" to invoke the exception. 56 F.3d at 871–72. The Eighth Circuit applied the definition of "judgment" in Federal Rule of Civil Procedure 54(a); namely, "a decree and any order from which an appeal lies," to the "judgment" language of the Anti–Injunction Act. *National Basketball Association*, 56 F.3d at 872. A preliminary injunction was determined to be sufficient, as the ruling: 1) confers important rights and finally adjudicates the issue of preserving the status quo until the merits are reached; and 2) was immediately appealable. *Id.* at 871–72.

With this Order, directing the entry of judgment, pursuant to Rule 54(b), with respect all issues resolved in the May 13, 1996 Memorandum Opinion and Order except punitive damages, those issues are immediately appealable. In other words, in the current situation, the application of Rule 54(b) has resulted in a "judgment," in terms of the Anti–Injunction Act, which may be protected or effectuated.

"Of course, the fact that an injunction *may* issue under the Anti–Injunction Act does not mean that it *must* issue." *Chick Kam Choo,* 486 U.S. at 151, 108 S.Ct. at 1692 (emphasis in original). Dalfort has argued that the Texas court should not be enjoined because there is no indication that the Texas court will not properly apply the law. There is nothing in the materials submitted to this Court that would support the conclusion that the Texas court would not consider well-established res judicata principles in ruling on Northwest's upcoming summary judgment motion,[12] and no reason to believe that Dalfort's counsel would argue otherwise.[13] Accordingly, this Court believes that an injunction, although otherwise justified, is not currently warranted.

It seems clear to the undersigned that finality has been reached with respect to the issues resolved in its May 13, 1996 Memorandum Opinion and Order, excepting again the punitive damages issue. Injunctive relief, on the basis of the present record, is not appropriate.

### Conclusion

Accordingly, based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Northwest's Motion for a Rule 54(b) Determination (Doc. No. 101) is **GRANTED IN PART.** For the reasons noted herein, and there being no just reason for delay, **IT IS ORDERED** that **JUDGMENT BE ENTERED** with respect to the issues determined in this Court's May 13, 1996 Memorandum Opinion and Order and the Clerk of the Court is expressly directed to enter a final judgment in favor of Northwest **DISMISSING WITH PREJUDICE** the following claims asserted by Dalfort in its Counterclaims:

Count One (defamation based on Northwest's statements to the press, Dalfort's customers, and others);

Count Two (defamation based on Northwest's statements to the FAA and others concerning Defendant's alleged incompetence);

Count Five (fraudulent and negligent misrepresentation);

Count Six (unjust enrichment); and

Count Seven (TDTPA claim).

**IT IS FURTHER ORDERED** that **JUDGMENT BE ENTERED** with respect to Dalfort's claim for additional compensation for work performed on the first five DC9–51 aircraft under Contract B, and the Clerk of the Court is expressly directed to enter a final judgment in favor of Northwest **DISMISSING WITH PREJUDICE** this claim.

---

**12.** Under federal law, collateral estoppel, or issue preclusion, makes a determination from one proceeding binding in another if: 1) the issue to be precluded is the same as that in the prior litigation; 2) the issue was actually litigated in the prior litigation; 3) the issue was determined by a valid and final judgment; and 4) the determination was essential to the previous judgment. *Abbott Bank v. Armstrong,* 44 F.3d 665, 666 (8th Cir.1995) (citation omitted). The application of these factors would almost certainly collaterally estop Dalfort from relitigating the issues in this Court's May 13, 1996 Memorandum Opinion and Order as to which judgment has been entered pursuant to Rule 54(b). Even if judgment had not been entered, collateral estoppel might operate to bar consideration—federal courts have recognized that "finality" in the context of collateral estoppel may mean nothing more than that "no really good reason" exists for allowing relitigation of the issue. *John Morrell & Co. v. Local Union 304A,* 913 F.2d 544, 563 (8th Cir.1990), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991) (quoting *Lummus Co. v. Commonwealth Oil Ref. Co.,* 297 F.2d 80, 89 (2d Cir.1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962)). These issues, however, are not before this Court and will undoubtedly be addressed by the Texas court.

**13.** At the June 14th hearing on Northwest's Rule 54(b) motion, Dalfort's counsel advised this Court of Dalfort's intent to immediately appeal an adverse ruling; however, it was not entirely clear whether Dalfort would appeal the entry of final judgment on some issues, unaccompanied by an injunction. *See* Motion Tr. at 27, 36. However, the overall tenor of oral argument suggests that Dalfort intends to appeal a Rule 54(b) determination in the apparent recognition of the finality of such an order for res judicata and collateral estoppel purposes. Pending resolution of such an appeal, it is assumed by the undersigned that counsel for Dalfort will not urge the Texas court to proceed on those issues subject to the Rule 54(b) order of this Court.

Given this intent, and to ensure fairness to both parties, the July 10 trial date will be held in abeyance until further Order of this Court. The parties are directed to keep this Court advised of future proceedings in the Eighth Circuit Court of Appeals and in Texas state court.

**IT IS FURTHER ORDERED** that Northwest's Motion to Enjoin the Parties from Participating in the Texas Court Proceeding, or in the Alternative an Expedited Trial Date (Doc. No. 101) is **DENIED.**[14]

**IT IS FURTHER ORDERED** that the July 10, 1996 trial date in this matter is **CONTINUED** pending resolution of Dalfort's announced intention to immediately appeal this Order to the Eighth Circuit. If no appeal is taken, the matter will proceed to trial.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Ibrahim Abdulahai Maimaje, pro se.

Elizabeth L. De la Vega, U.S. Atty. Office, Minneapolis, MN, for U.S.

---

**14.** The denial of the requested injunctive relief is, of course, without prejudice to the right of Northwest to seek similar relief here, or elsewhere, should future proceedings in the Texas court warrant.